IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JEANNETTE C. MARTIN,

                              Plaintiff,

          vs.                                    Civil Action No.
                                                 5:06-CV-0720 (GLS/DEP)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                              Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

OLINKSKY, SHURTLIFF LAW FIRM          JAYA A. SHURTLIFF, ESQ.
300 S. State St.
5th Floor
Syracuse, New York 13202

FOR DEFENDANT:

HON. GLENN T. SUDDABY                 WILLIAM H. PEASE, ESQ.
United States Attorney                Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

     [1]     Plaintiff's complaint, which was filed on June 9, 2006, named Jo Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL    MARIA F. SANTANGELO, ESQ.
Social Security Administration    Special Assistant U.S. Attorney
26 Federal Plaza
New York, New York 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Jeannette C. Martin, a former truck driver who suffers from

various physical conditions including, principally, a frozen left shoulder and

reflex sympathetic dystrophy ("RSD"), which preclude her from returning to

work in her chosen occupation, has commenced this proceeding to obtain

judicial review of the denial of her application for disability insurance benefits

("DIB") and supplemental security insurance ("SSI") payments under the

Social Security Act (the "Act").   In support of her challenge to the agency's

unfavorable determination plaintiff maintains that the pivotal finding of the

administrative law judge ("ALJ") assigned to hear and determine the matter

for the Social Security Administration, to the effect that she was not disabled

at the relevant times and thus not entitled to DIB and SSI benefits, results

from the improper rejection of contrary opinions from her treating physician

and is based upon a residual functional capacity ("RFC") determination which

is not supported by substantial evidence.  Plaintiff also asserts that the

testimony elicited from a vocational expert regarding the availability of work

which she is presently capable of performing was not properly supported, and that in arriving at his determination the ALJ failed to consider the impact of her obesity upon the ability to perform work-related functions.

Having carefully reviewed the record in light of plaintiff's contentions, I find that the agency's determination resulted from the application of proper legal principles, and is supported by substantial evidence.  Accordingly, I recommend that the Commissioner's determination be affirmed, and plaintiff's complaint in this action be dismissed.

I.    BACKGROUND

Plaintiff was born in 1956; at the time of the administrative hearing in this matter, plaintiff was forty-eight years old.  Administrative Transcript at 54, 111, 235.[2]  Plaintiff lists her height as five feet and three inches, and at various times has weighed between one hundred fifty and two hundred eleven pounds.  AT 81, 194, 202, 207.  Plaintiff is divorced, and lives alone.  AT 56, 57, 95.  Plaintiff is right hand dominant, and has achieved both a high school equivalency diploma and an associates degree in retail management, and additionally is taking further college courses toward completion of a bachelor's degree.  AT 56, 57, 69, 88, 273, 275.

---

[2]    Portions of the administrative transcript filed by the Commissioner in connection with the action, Dkt. No. 5, and comprised of proceedings and evidence before the agency, will be cited herein as "AT ___."

Prior to September of 1999, plaintiff was employed for approximately three years as a commercial truck driver working for various companies.  AT 83, 121, 274.  Plaintiff has also held other casual employment positions, including as a motel desk clerk, a customer service representative, and a waitress.  AT 83, 274.

On September 4, 1999, while unloading a truck, plaintiff fell and injured her left wrist.  AT 122.  Following treatment at a hospital emergency room in Sioux Falls, South Dakota, near where the accident occurred, plaintiff was referred to Dr. Tom D. Howey, M.D. for evaluation and follow-up care.  *Id.*  A closed reduction and percutaneous pinning of displaced intra-articular fracture of the left distal radius surgical procedure was performed by Dr. Howey on September 9, 1999 to repair damage caused by plaintiff's injury.  AT 124.  Following immobilization of the injured wrist, initially through use of a long armed cast for approximately six weeks following the operation, and later utilizing a short arm cast which was removed on or about November 8, 1999, plaintiff began undergoing physical therapy.  AT 124, 127, 139-56.

After moving from South Carolina to the Central New York area plaintiff, on October 4, 1999 began treating with Dr. Andrew K. Palmer for her injuries.  AT 126-138.  Based upon his examination of plaintiff's wrist, Dr. Palmer prescribed physical therapy, which appeared to result in improvement to a

point when in January of 2000, he suggested that Martin begin planning a return to work.  AT 128.

In or about March of 2000, plaintiff began to develop severe pain in her left shoulder area  AT 128, 131.  After initially diagnosing the plaintiff as suffering from a "frozen shoulder" and suggesting a change in physical therapy providers, Dr. Palmer referred the plaintiff to Dr. Tamara A. Scerpella, an orthopedist, for evaluation and treatment.  AT 131-32, 163-64. Plaintiff has since been diagnosed by Dr. Scerpella as suffering from left shoulder adhesive capsulitis with RSD, with a possible additional underlying rotator cuff impingement syndrome.  AT 163.  For that condition plaintiff was treated through a variety of medications and referred for treatment to Dr. Robert Tiso, a pain management specialist who noted his impression that plaintiff was probably suffering from complex regional pain syndrome of the left upper extremity.  AT 173.  Based upon his findings, Dr. Tiso prescribed various medication, including Neurontin, and administered sympathetic blocks and stellate ganglion blocks.[3]  AT 173.  Despite these treatments, plaintiff has continued to report to Dr. Scerpella and Dr. Tiso that she suffers from limited range of motion in her shoulder, weakness, and excruciating pain.  AT 228, 229.

_____

[3]     Plaintiff has also been prescribed other pain medications, including Topomax, Elavil, Percocet, Skelaxin, Darvocet and Amtriptyline.  AT 229.

-5-

In addition to seeing her various treating sources, plaintiff has been evaluated by consultants on more than one occasion.  Plaintiff was examined by Dr. John J. Cambareri, an orthopedic surgeon, on November 27, 2000 and again on February 8, 2002. AT 191-95, 201-02.  In a report of his initial examination, Dr. Cambareri confirmed that plaintiff suffers from the residual effects of her wrist fracture as well as pain of the left upper extremity "of unclear etiology", additionally opining that plaintiff had at that point achieved "maximum medical improvement" and noting that the plaintiff "is quite adamant that she is not planning on returning to work." AT 194.  In a memorandum regarding of his subsequent evaluation Dr. Cambareri noted that plaintiff's pain complaints appear to be "way out of proportion on [sic] the objective physical findings" stating his belief that at that point she was capable of returning to work, including as a truck driver.  AT 202.

Plaintiff was also examined on July 17, 2002 by Dr. Ellen Young, an orthopedic consultant retained by the state agency.  AT 206-08.  During that examination, plaintiff reported that she is unable to lift more than twenty to twenty-five pounds in light of her condition, and that it is difficult to raise her non-dominant, left arm above her head.  AT 206.  Based upon her examination, Dr. Young concluded that plaintiff suffers from severe limitation in the ability to lift, carry, and handle objects using her left arm, although

noting that with the benefit of nerve blocks her prognosis, quantified as "poor", could be improved.  AT 208.

On April 13, 2004 Dr. Myra Shayevitz, another orthopedic consultant retained by the state, performed a consultative examination of the plaintiff. AT 217-20.  Based upon her examination, Dr. Shayevitz diagnosed the plaintiff as suffering from RSD of the left arm with a "marked limitation of motion" of the neck and left shoulder.  AT 219.  Dr. Shayevitz thus concluded that while plaintiff experiences no limitations on her ability to sit or stand, her ability to walk is significantly limited, adding that "[s]he is absolutely positively very, very, very limited in any lifting or use of the left upper extremity."  AT 220; *see also* AT 221-24.

Plaintiff has not engaged in any significant work activity since the onset of her allegedly disabling condition.[4]  AT 83, 121, 275.  Plaintiff's daily activities include cooking, cleaning, doing laundry, and shopping.  AT 218, 275-76.  Plaintiff is also able to bathe and dress herself, wash her hair, and typically watches television, listens to the radio, and reads.  AT 218.

II.   PROCEDURAL HISTORY

A.   Proceedings Before The Agency

---

[4]      Plaintiff performed some work between April of 2000, and January, 2002 as an on-call night hotel clerk, in exchange for being allowed the use of a room, valued at $600 per month.  AT 288-89.  Plaintiff testified, however, that she typically slept during her shift and never awoke when people attempted checking in.  *Id.*

Plaintiff filed applications for DIB and SSI benefits on June 18, 2002, alleging her inability to work as a result of her wrist and left upper extremity condition, and asserting a disability onset date of September 4, 1999.  AT 54, 82, 235.  Following the denial of those applications, AT 238, a hearing was conducted on May 24, 2004 before ALJ John R. Tarrant to address plaintiff's request for Social Security benefits.[5]  During that hearing, at which plaintiff was represented by counsel, testimony was given by the plaintiff and Esperanza DiStefano, a vocational expert whose opinions were elicited by the ALJ to assist in the disability determination.  AT 270-91.

On August 12, 2004 ALJ Tarrant issued a written decision denying plaintiff's application for Social Security benefits.  AT 16-22.  In his decision, after conducting a *de novo* review of the available evidence, including plaintiff's medical records, and applying the now-familiar five step test for determining disability, the ALJ concluded at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset date.  AT 17. Proceeding to steps two and three, ALJ Tarrant found that plaintiff suffers from adhesive capsulitis of the left shoulder with RSD, an impairment of sufficient severity to qualify at step two of the disability algorithm, but concluded that the condition was not sufficiently severe to meet or medically

---

[5]     An earlier hearing session, conducted by ALJ Tarrant on March 17, 2004, was adjourned based upon the unavailability of plaintiff's lawyer.  *See* AT 264-269.

equal any of the listed, presumptively disabling impairments set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically noting that he had considered but rejected the applicability of Listing § 1.02.  AT 18.

Before proceeding to step four, ALJ Tarrant surveyed the available evidence to determine plaintiff's RFC, concluding that opinions of her treating physician, Dr. Tamara Scerpella, were entitled to some weight, but affording the views expressed by consultant Dr. Myra Shayevitz greater weight as being more consonant with the medical evidence in the record and plaintiff's reported daily activities.  AT 19.  Ultimately, ALJ Tarrant concluded that despite her condition, plaintiff maintains the capacity to lift and carry up to ten pounds occasionally, though with no functional use of her left upper extremity; is able to stand or walk, and to sit, for up to six hours in an eight hour day; but lacks the ability to climb, balance, stoop, crouch, kneel, or crawl, additionally finding that she should avoid unprotected heights, dangerous machinery, concentrated exposure to dust and fumes and temperature extremes.  AT 19.

Proceeding to step four of the sequential analysis, ALJ Tarrant concluded that in light of its exertional requirements plaintiff is unable to perform her past relevant work as a tractor trailer driver.  AT 20.  At step five, the ALJ initially applied the medical vocational guidelines (the "grid") set forth

in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, as a framework, concluding that given her RFC and other relevant criteria there are sufficient jobs in the national economy which the plaintiff can perform, and that she is therefore not disabled.  In light of the potential erosion of jobs upon which the grid is predicated, based principally upon plaintiff's limitations in the use of her upper left extremity, however, ALJ Tarrant went a step further, eliciting testimony from a vocational expert to augment the conclusion directed by the grid, posing a hypothetical question closely approximating the plaintiff's limitations and receiving, in response, the expert's opinion that there are jobs in sufficient numbers in the national and regional economy which plaintiff is capable of performing, notwithstanding her limitations, including as an information clerk, telephone solicitor, order clerk, and surveillance system monitor.  AT 20-21.  In light of the directed finding of no disability after applying the grid, confirmed by the testimony of vocational expert, ALJ Tarrant concluded that plaintiff was not disabled at any relevant time.  AT 21-22.

ALJ Tarrant's decision became a final determination of the agency on April 21, 2006, when plaintiff's request for review of that opinion was denied by the Social Security Administration Appeals Council.  AT 5-7.

B.     This Action

Plaintiff commenced this action on June 9, 2006.  Dkt. No. 1.  Issue was thereafter joined by the Commissioner's filing of an answer, preceded by the compilation and filing of an administrative transcript of proceedings and evidence before the agency.  Dkt. Nos. 5, 6.  With the filing of plaintiff's brief on December 3, 2006, Dkt. No. 8, and that on behalf of the defendant on January 18, 2007, Dkt. No. 10, the case is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[6]  *See* Fed. R. Civ. P. 72(b).

## III.   DISCUSSION

### A.   Scope of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d

---

[6]   This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

        The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401,

91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*).  "To

determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the

evidence must also include that which detracts from its weight."  *Williams*,

859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488,

715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have

been applied, and/or that substantial evidence does not support the agency's

determination, the agency's decision should be reversed.  42 U.S.C. §

405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may

remand the matter to the Commissioner under sentence four of 42 U.S.C. §

405(g), particularly if deemed necessary to allow the ALJ to develop a full

and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at

148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand

pursuant to sentence six of section 405(g) is warranted if new, non-

cumulative evidence proffered to the district court should be considered at

the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*,

940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is

appropriate when there is "persuasive proof of disability" in the record and it

would serve no useful purpose to remand the matter for further proceedings before the agency.  *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the

-14-

claimant is engaging in substantial gainful activity; if so, then the claimant is

not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b),

416.920(b).  If the claimant is not gainfully employed, then the second step

involves an examination of whether the claimant has a severe impairment or

combination of impairments which significantly restricts his or her physical or

mental ability to perform basic work activities.  *Id.* §§ 404.1520(c),

416.920(c).  If the claimant is found to suffer from such an impairment, the

agency must next determine whether it meets or equals an impairment listed

in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.*

Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively

disabled."  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728

F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

       If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's residual functional capacity ("RFC")

precludes the performance of his or her past relevant work.  20 C.F.R. §§

404.1520(e), 416.920(e).  If it is determined that it does, then as a final

matter the agency must examine whether the claimant can do any other

work.  *Id.* §§ 404.1520(f), 416.920(f).

       The burden of showing that the claimant cannot perform past work lies

with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*,

728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Evidence in this Case</u>

        1.    <u>Treating Physician</u>

In support of her petition for judicial review of the agency's determination, plaintiff challenges the ALJ's elevation of the opinions of Dr. Shayevitz, a consultant, over those of Martin's longstanding treating physician, Dr. Scerpella.  Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[7]  Such opinions are not controlling, however,

---

[7]    The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case

if contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588. Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner. *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions. *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

_____

record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Plaintiff's brief does not specify precisely what opinions of her treating physician were rejected by the ALJ as being in conflict with his ultimate determination.  It is true that in his notes of an office visit on May 26, 2004, arranged for the plaintiff by her attorney, Dr. Scerpella reports that "she is totally disabled from work by virtue of [her] left upper extremity condition".  *See* AT 229; *see also* AT 168 ("At this point I cannot assign a scheduled loss of use to [plaintiff's] shoulder because the condition is in a state of change.  I reiterate that she is totally disabled by virtue of the left shoulder condition and secondary reflex sympathy dystrophy.  She cannot return to employment at this time.").[8]   That opinion, however, addresses an ultimate issue reserved for the Commissioner, and is not entitled to special deference even though it derives from a treating source.  20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999).

Leaving aside the fact that they involve the ultimate issue of disability, it is clear that Dr. Scerpella's opinions regarding plaintiff's inability to work are wholly inconsistent not only with the opinions of Dr. Shayevitz, but indeed

---

[8]      This opinion was obviously given in the context of plaintiff's claim for workers' compensation benefits.  It should be noted, however, that disability standards under the Act differ significantly from those applicable under various state's workers' compensation laws. *Crowe v. Comm'r of Soc. Sec.*, No. 01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (Sharpe, J.) (citing *Gray v. Chater*, 903 F. Supp. 293, 301 n.8 (N.D.N.Y. 1995) ("Workers' compensation determinators are directed to the workers' prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.")).

with Dr. Scerpella's own treatment notes.  Nowhere in any of Dr. Scerpella's reports is there any indication that aside from the left upper extremity, she has treated the plaintiff for conditions which pose limitations on her abilities including to lift and carry with her right upper extremity, and to utilize her lower extremities.  *See, e.g.* AT 166 (noting, on February 6, 2000, that while plaintiff was unable to use her left upper extremity she experiences no limitations in her dominant right upper extremity.)  Moreover, by all accounts, including Dr. Scerpella's opinions, plaintiff has experienced at least some degree of favorable response with nerve block therapy and other regimens used in an attempt to improve control of her pain.  AT 168; *see also* AT 187, 206, 217.  In terms of the effects of her medication, it should be noted that treatment records from the Office of Pain Management in September of 2002 reflect that at that time plaintiff denied experiencing any side affects of her medication, affirmatively adding that she is doing well on the medication.  AT 175; *see also* AT 18.

It should be further noted that Dr. Scerpella's opinions are contradicted by those of two other examining consultants – Dr. John Cambareri, who performed a orthopedic assessment in February of 2002, and again in March of 2002, and Dr. Ellen Young, who examined the plaintiff in July of 2002.  AT 191-95, 201-02, 206-07.  Noting that plaintiff's pain complaints appeared to

be disproportionate to the stated objective findings, in the report of his second evaluation Dr. Cambareri noted his opinion that plaintiff could even return to her job as a truck driver, notwithstanding its significant exertional requirements.  AT 202.  Similarly, in the report of her evaluation Dr. Young concluded that plaintiff is limited only to lifting, carrying and handling objects with her left upper extremity.  AT 208.

The RFC findings of the ALJ, and his potential rejection of Dr. Scerpella's opinions, also draw support from conclusions reported in the August, 2002 assessment of a non-examining state agency review physician.  AT 210-16.  In that assessment, the physician opined that plaintiff is able to perform the requirements of light work, with some additional manipulative and grasping limitations of the left upper extremity.  *Id.*  Such agency physician reports, if well-supported, can be considered by an ALJ when resolving potential conflicts among medical evidence in the record.  *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.).

In sum, the opinions of examining consultant Dr. Shayevitz garner the support of substantial evidence and, to the extent that they may be contradicted by opinions of Dr. Scerpella, were properly accorded greater weight.[9]  *See id.*

---

[9]     Plaintiff also asserts that before rendering his decision the ALJ should have sought additional information from Dr. Scerpella.  The mere fact that the evidence

## 2.   The ALJ RFC's Determination

After reviewing the available evidence, ALJ Tarrant arrived at a function-by-function RFC determination which included an assessment of plaintiff's ability to lift and carry.  When resorting to the grid, incorporating his finding, the ALJ concluded that plaintiff is capable of performing "a significant range of light work as defined [in the regulations]."[10]  AT 20.  Plaintiff argues

---

considered by the ALJ is conflicting or internally inconsistent does not require elicitation of further medical opinions; it is the function of the ALJ to weigh conflicting evidence and resolve any discrepancies.  *See Lukaszek v. Barnhart*, No. 05-CV-831, 2008 WL 2073962, at *16 (N.D.N.Y. May 14, 2008) (Bianchini, M.J.) ("It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record.") (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426 (1971)).  Only when the evidence contained in the record, though consistent, is insufficient to make a determination of disability, or when, after weighing all of the conflicting evidence, the ALJ determines that he or she cannot make a final decision based upon the available evidence, that the ALJ is obligated by regulation to seek additional evidence.  *See* 20 C.F.R. §§ 404.1527(b) and (c), 416.927(b) and (c); *see also* 20 C.F.R. §§ 404.1512(e), 416.912(e); *see, e.g., Rivera v. Barnhart*, No. 05 Civ. 6638, 2006 WL 1227276, at *5-6 (S.D.N.Y. May 5, 2006).  In this case the ALJ was not faced with either situation, and was thus not required to recontact Dr. Scerpella for more information.

[10]      By regulation light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

that this approach was flawed, challenging both the ALJ's RFC finding and his use of the grid to support his ultimate disability determination.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC

---

20 C.F.R. § 404.1567(b).

finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

In his RFC determination the ALJ concluded, *inter alia*, that plaintiff retains the ability to lift or carry up to ten pounds occasionally, though with no functional use of her left upper extremity, and to stand, walk, and sit for up to six hours in an eight hour work day.  AT 19.  This determination, which is not directly challenged, garners the support of substantial evidence in the record, including the opinions of Dr. Shayevitz, Dr. Cambareri, Dr. Young, as well as the agency's non-examining consultant.  Indeed, for the most part the RFC determination is supported by the opinions of plaintiff's own treating physician, Dr. Scerpella.

Plaintiff's RFC argument is in reality addressed to the ALJ's resort to the grid.  Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid.  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether

he or she can engage in substantial gainful work in the national economy.

*Rosa*, 168 F.3d at 78.  Whether or not the grid should be applied in order to

make a step five determination presents a case-specific inquiry which

depends on the particular circumstances involved.  *Bapp*, 802 F.2d at 605.  If

a plaintiff's situation fits well within a particular classification, then resort to

the grid is appropriate.  *Id.*  If, on the other hand, nonexertional impairments,

including pain, <u>significantly</u> limit the range of work permitted by exertional

limitations, then use of the grid is inappropriate, in which case further

evidence and/or testimony is required.[11]  *Rosa*, 168 F.3d at 78; *Bapp*, 802

F.2d at 605-06.

It is true that when applying the grid ALJ Tarrant assumed plaintiff's

ability to perform most of the requirements of light work, with a lifting

requirement which exceeds his actual RFC determination.  This potential

error, however, is of no moment.  Appropriately discerning a potential erosion

of the available jobs upon which the grid is predicated, the ALJ properly

chose to elicit the opinions of a vocational expert before deciding the ultimate

_____

[11]   As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's
> impairments that affect [his or] her ability to meet the
> requirements of jobs other than strength demands, and
> includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. §
404.1569(a), (c)).

issue of disability.  *See* AT 282-88.  In the hypothetical which was posed to the vocational expert, after it was confirmed by the witness that the plaintiff is incapable of returning to her past relevant work, ALJ Tarrant followed his RFC finding, limiting the lifting and carrying requirements to ten pounds occasionally with unrestricted use of the plaintiff's right upper extremity, but with no functional use of her left.  AT 284-85.  Based upon the limitations disclosed in the hypothetical, the vocational expert opined that there were jobs available which the plaintiff is capable of performing.

Since the ALJ's RFC finding is supported by substantial evidence, the finding of disability predicated upon the expert's testimony was sufficient to carry the Commissioner's burden at step five of the disability test.

### 3.   Sufficiency of Vocational Expert Testimony

Plaintiff next argues that because the Dictionary of Occupational Titles ("DOT"), an authoritative source speaking to characteristics of various jobs, lacks any indication as to whether the requirements of the available jobs identified by the expert can be performed by the plaintiff using only one arm, the expert's testimony is inconsistent with the DOT.  In support of that argument, plaintiff cites Social Security Ruling ("SSR") 00-4p.

Under SSR 00-4p, a conflict exists between the testimony of a vocational expert and the DOT when the two are actually in disagreement in

categorizing and describing the requirements of the job as performed in the national economy. *See Jasinski v. Barnhart,* 341 F.3d 182, 184-85 (2d Cir. 2003). In making her argument, plaintiff does not point to any explicit conflict between the testimony of vocational expert Esperanza DiStefano and the DOT, and in particular with respect to the job of surveillance system monitor. Despite plaintiff's argument to the contrary, even the finding that one job exists in sufficient numbers in the national economy capable of being performed by the plaintiff is sufficient to sustain the Commissioner's burden at step five.[12] *See* 42 U.S.C. §§ 423(d)(1), (A)(d)(2)(A), 1382c(a)(3)(A), (B). Perceiving no conflict between the DOT and the expert's testimony regarding available work, I recommended rejection of this argument.

### 4.   Failure To Consider Plaintiff's Alleged Obesity

Within plaintiff's medical records are passing references to her suffering from mild obesity. Plaintiff maintains that the ALJ erred in failing to consider the effects of her obesity on her ability to perform work-related functions. In making that argument, plaintiff places heavy reliance upon Social Security Ruling ("SSR") 02-1p, which addresses obesity and its impact upon a

---

[12]   It should be noted that at the hearing, plaintiff's counsel, who cross-examined the vocational expert in other areas, could have chosen to question her concerning whether the jobs referenced in her opinion could be performed by the plaintiff without the use of her left upper extremity, but chose not to avail himself of that opportunity.

claimant's ability to perform work functions.

When considering whether a claimant's impairment meets or equals one or more of the conditions listed in the regulations, that person's obesity and its effects in combination with musculoskeletal impairments must be considered, in the context of the specifics of the claimant's circumstances.[13] *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.00(Q); *see also* SSR 02-1p; *Orr v. Barnhart,* 375 F. Supp. 2d 193, 199 (W.D.N.Y. 2005).  As the regulations observe,

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity.  The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(Q).

Undeniably, plaintiff's medical records contain at least casual reference

---

[13]    Obesity as a listed disability was eliminated in and of itself as a listed disability in October of 1999.  *See* Social Security Ruling 00-3p.  The description as a potential contributing factor to disability is now referenced in section 1.00(Q) of the listings.

to plaintiff's obesity.  *See, e.g.,* AT 172 (report of Dr. Tiso, dated August 17, 2000, stating that "[i]n general the patient is a moderately obese, middle age white female in no acute distress."). The mere presence of a disease or impairment alone, however, is insufficient to establish disability; instead, it is the impact of the disease, and in particular any limitations which it may impose upon the ability to perform basic work functions, that is pivotal to the disability inquiry.  *See Rivera v. Harris,* 623 F.2d 212, 215-16 (2d Cir. 1980); *Coleman v. Shalala,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995).

In this instance there is no indication whatsoever among the available medical evidence that plaintiff's obesity has limited her ability to perform work related functions.  Indeed, obesity does not appear to have been offered as a formal diagnosis by any of plaintiff's health care providers, nor have any recommendations been made that plaintiff obtain treatment or address her weight-related issues.

It should also be noted that plaintiff has never alleged or produced evidence suggesting that her obesity limits her ability to perform work-related functions.  Both plaintiff's June, 2002 application for SSI and her disability report list her left upper extremity as the sole, allegedly disabling condition. AT 82, 230.  Moreover, none of the medical records in the evidence reveal any complaints by the plaintiff to her healthcare providers regarding

limitations resulting exclusively from her obesity.  Plaintiff similarly failed to urge her obesity as a disabling condition at the administrative hearing in this matter.  *See* AT 275, 277-82.  Indeed, obesity is nowhere mentioned either in plaintiff's memorandum to the Appeals Council in support of her request for review, *see* AT 252-262, or in her complaint in this action.  Dkt. No. 1.

In sum, while the plaintiff may be overweight, and indeed perhaps even moderately obese – as suggested in passing by Dr. Tiso, her pain management specialist – the record is wholly devoid of evidence to suggest that the condition imposes any limitations upon her ability to perform work-related functions. Accordingly, the ALJ did not err in failing to consider that condition.

IV.    SUMMARY AND RECOMMENDATION

The arguments asserted by the plaintiff in support of her challenge to the Commissioner's determination in this matter are wholly unpersuasive. The ALJ's RFC determination, the lynchpin of his finding of no disability, is amply supported by substantial evidence in the record, including based upon the opinions of plaintiff's treating physician and those of examining and non-examining consultants, as well as by the extent of her daily activities. Accordingly, given the opinion of the vocational expert, based upon that RFC finding, to the effect that there is available work in the national and local

economies which plaintiff is capable of performing, the determination that the plaintiff is not disabled was the product of the application of proper legal principles and is supported by substantial evidence in the record.  It is therefore hereby

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1) (2006); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      May 28, 2008
            Syracuse, NY


                                    David E. Peebles
                                    U.S. Magistrate Judge